**SLATER ROSS**
Christopher A. Slater, OSB No. 97398
Michael J. Ross, OSB No. 91410
Sovereign Hotel, 4th Floor
710 S.W. Madison Street
Portland, Oregon 97205
Tel: (503) 227-2024
Fax: (503) 224-7299
cslater@slaterross.com
mjross@slaterross.com

**FEDERMAN & SHERWOOD**
William B. Federman, OK Bar No. 2853
Sara E. Collier, OK Bar No. 20473
10205 N. Pennsylvania Avenue
Oklahoma City, OK 73120
Tel: (405) 235-1560
Fax: (405) 239-2112
wbf@federmanlaw.com
sec@federmanlaw.com

## UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON
## PORTLAND DIVISION

| | |
|---|---|
| PRATIK RATHORE, Derivatively on Behalf of GALENA BIOPHARMA, INC.,            Plaintiff, | CASE NO.: |
| vs. | **VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT** |
| SANFORD J. HILLSBERG, RICHARD CHIN, STEPHEN S. GALLIKER, STEVEN A. KRIEGSMAN, RUDOLPH NISI, and MARK J. AHN,            Defendants, | **(28 U.S.C. §1332)** |
| -and- | **DEMAND FOR JURY TRIAL** |
| GALENA BIOPHARMA, INC.,            Nominal Defendant. | |

Plaintiff, by his attorneys, submits this Verified Shareholder Derivative Complaint against the Individual Defendants named herein.

## NATURE AND SUMMARY OF THE ACTION

1.      This is a verified shareholder derivative action brought on behalf of nominal defendant Galena Biopharma, Inc. ("Galena" or the "Company") against certain of its officers and directors for breaches of fiduciary duties and disgorgements of profits from the improper stock sales detailed herein.  These actions have exposed the Company to millions of dollars in potential liability for violations of state and federal law.

2.      Galena is a biotechnology company focused on the development and commercialization of targeted oncology treatments that address major unmet medical needs to advance cancer care. The Company is pursuing the development of cancer therapeutics using peptide-based immunotherapy products.

3.      In July 2013, Galena paid $50,000 to a subsidiary of The DreamTeam Group ("DreamTeam") company to promote a "brand awareness campaign."  The campaign of "advertising, branding, marketing, investor relations and social media services" was to last 240 days per a disclaimer on DreamTeam's web site that has since been removed, according to *TheStreet.com*.  During this time frame, the Company's stock nearly tripled in value.  At the close of this period, Galena insiders made millions of dollars in selling Galena stock.

4.      On February 12, 2014, Adam Feuerstein ("Feuerstein") published an article on *TheStreet.com* bringing these allegations to light, claiming Galena was engaging in a misleading brand awareness campaign aimed at boosting its stock price. Additionally, the article revealed that Galena paid DreamTeam to publish articles under aliases promoting the Company's stock without disclosing who paid for them.  Defendants (defined below), however, failed to inform

the investing public of this while at the same time selling Galena common stock for gross proceeds of more than *$14.6 million* before the belated admission on February 14, 2014, that the Company had paid DreamTeam to promote its stock.

5.      On this news, Galena's stock plummeted $0.63 per share to close at $3.73 per share on February 14, 2014.

6.      Defendants benefitted from the Company's illicit promotion of its stock as the price tripled in value from the time the DreamTeam was hired in summer 2013 to the time the Defendants sold their stock in January and February 2014.  Plaintiff brings this action against the Individual Defendants to repair the harm that they caused the Company with their faithless actions.

## JURISDICTION AND VENUE

7.      The Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(a)(2) in that Plaintiff and Defendants are citizens of different states and the matter in controversy exceeds $75,000 exclusive of interest and costs.

8.      This action is not a collusive one designed to confer jurisdiction on a court of the United States which it would otherwise not have.

9.      Venue is proper in this District because a substantial portion of transactions and wrongs complained of herein occurred in this District.  Defendants either reside in or maintain executive offices or participated in board meetings in this district and have received substantial compensation in this District by engaging in numerous activities and conducting business here.

10.     Venue is proper in this Division because Galena is headquartered in Multnomah County and a substantial portion of the transactions and wrongs complained of herein occurred in this Multnomah County.

## THE PARTIES

**Plaintiff**

11.    Plaintiff Pratik Rathore was a shareholder of Galena at the time of the wrongdoing complained of, has continuously been a shareholder since that time, and is a current Galena shareholder.   Plaintiff is a citizen of the State of Indiana.

**Nominal Defendant**

12.    Nominal Defendant Galena is an integrated global oncology company. Galena maintains its headquarters at 4640 SW Macadam Avenue, Suite 270, Portland, Oregon 97239.

**Individual Defendants**

13.    Defendant Sanford J. Hillsberg ("Hillsberg") has been the Chairman of the Board since 2007. Upon information and belief, Hillsberg is a citizen of California.

14.    Defendant Richard Chin ("Chin") has served as a director of Galena since 2009. Upon information and belief, Chin is a citizen of California.

15.    Defendant Stephen S. Galliker ("Galliker") has served as a director of Galena since 2007.  Upon information and belief, Galliker is a citizen of Florida and Massachusetts.

16.    Defendant Steven A. Kriegsman ("Kriegsman") has served as a director of Galena since 2006.  Upon information and belief, Kriegsman is a citizen of California.  Kriegsman is no stranger to DreamTeam's illicit stock promotion scheme.  Kriegsman is the CEO of CytRx, another DreamTeam client.  CytRx paid $65,000 for a year's worth of stock promotion by DreamTeam.  CytRx, along with Kriegsman, have recently been sued for securities fraud for failing to disclose that certain articles regarding the company were actually paid promotional materials issued and edited by DreamTeam.

17.     Defendant Rudolph Nisi ("Nisi") has served as a director of Galena since 2009. Upon information and belief, Nisi is a citizen of New York.

18.     Defendant Mark J. Ahn ("Ahn") has served as Galena's President and Chief Executive Officer ("CEO") since March 31, 2011 and as a director since 2007.   Upon information and belief, Ahn is a citizen of Oregon.

19.     Defendants Hillsberg, Chin, Galliker, Kriegsman, Nisi and Ahn are referred to collectively herein as the "Individual Defendants", "Defendants" and "Insider Selling Defendants."

## DUTIES OF THE INDIVIDUAL DEFENDANTS

### Fiduciary Duties

20.     By reason of their positions as officers, directors, and/or fiduciaries of Galena and because of their ability to control the business and corporate affairs of Galena, the Individual Defendants owed and owe Galena and its shareholders fiduciary obligations of trust, loyalty, good faith, and due care, and were and are required to use their utmost ability to control and manage Galena in a fair, just, honest, and equitable manner.   The Individual Defendants were and are required to act in furtherance of the best interests of Galena and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit.

21.     Each officer and director of the Company owes to Galena and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.   In addition, as officers and/or directors of a publicly held company, the Individual Defendants had a duty to promptly disseminate accurate and truthful information so

that the market price of the Company's stock would be based on truthful and accurate information.

**Code of Ethics and Conduct**

22.     Galena displays on its website the Company's Code of Ethics and Conduct (the "Code"). Each of the Company's employees, officers and directors must work to comply with the policies set forth in the Code. Any violation of the Code is supposed to result in disciplinary action. Disciplinary action also applies to those who direct or approve improper actions or is aware of those actions, but does nothing to correct those actions or fails to exercise appropriate supervision.

23.     With respect to insider trading, the Code states that "[i]t is illegal for any person, either personally or on behalf of others, (i) to buy or sell securities while in possession of material nonpublic information, or (ii) to communicate material nonpublic information to another person who trades in the securities on the basis of the information or who in turn passes the information on to someone who trades."

24.     According to the Code, all directors and officers and employees must comply with these "insider trading" restrictions.

**Breaches of Duties**

25.     Each Individual Defendant, by virtue of his position as a director and/or officer, owed to the Company and to its shareholders the fiduciary duty of loyalty and the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets. The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as officers and directors of Galena, the absence of good faith on their part, and a reckless

disregard for their duties to the Company and its shareholders that the Individual Defendants were aware or should have been aware posed a risk of serious injury to the Company. The conduct of the Individual Defendants who were also officers and/or directors of the Company have been ratified by the remaining Individual Defendants who collectively comprised all of Galena's Board.

26.     The Individual Defendants breached their duty of loyalty by allowing defendants to cause, or by themselves causing, illegal insider trades. The Individual Defendants also failed to prevent the other Individual Defendants from taking such illegal actions. In addition, as a result of the Individual Defendants' improper actions and course of conduct, the Company is now the subject of a class action lawsuit that alleges violations of securities laws. As a result, Galena has expended, and will continue to expend, significant sums of money.

## SUBSTANTIVE ALLEGATIONS

### Background of the Company and its Financial Condition

27.     According to the Company's SEC filings, Galena is a biopharmaceutical company focused on developing and commercializing innovative, targeted treatments that address major unmet medical needs to advance cancer care.

28.     The Company admits that the biotechnology industry, including the cancer therapy vaccines, hematology therapies, and break-through cancer pain management markets, are intensely competitive and involves a high degree of risk. The Company competes with other companies that have far greater experience and financial, research and technical resources. Potential competitors in the United States and worldwide are numerous and include pharmaceutical and biotechnology companies, educational institutions and research foundations,

many of which have substantially greater capital resources, marketing experience, research and development staffs and facilities than the Company.

29.    The Company has generated substantial operating losses and negative cash flow from operations since its inception. For example, for 2013 and 2012, the Company incurred net operating losses of $33.8 million and $21.2 million, respectively, and its net cash used in operating activities was $28.9 million and $21.0 million, respectively, and, at December 31, 2013, the Company's accumulated deficit was $178.9 million. The Company expects to continue to incur losses and negative cash flow for the foreseeable future.

30.    Clearly, the Company was in desperate need to generate significant revenues to achieve profitability, which ultimately led to the hiring of DreamTeam to pump the Company's stock.

**The Company Belatedly Discloses it Hired the DreamTeam to Pump its Stock**

31.    On February 12, 2014, Feuerstein published an article on *TheStreet.com,* claiming Galena was engaging in a misleading brand awareness campaign aimed at boosting its stock price. Additionally, the article represented that Galena paid investor relations firm DreamTeam to publish articles under aliases promoting the Company's stock without disclosing who paid for them. The article stated in part:

> Two articles touting Galena Biopharma (GALE) were removed from *Seeking Alpha* Monday because they were written by the same person using different aliases.
>
> This is the second time Seeking Alpha has been forced to take action against individuals using multiple aliases to tout Galena, a small drug developer with a breast cancer vaccine in a phase III study. In January 2013, the investor Web site removed five articles promoting Galena written by the same individual under three different pseudonyms.
>
> The most recent incident is more serious and potentially damaging because of evidence linking Galena to a stock-promotions firm which wrote and published the articles on *Seeking Alpha.* The articles were part of a broader, coordinated

"brand awareness campaign" designed to boost Galena's stock price, according to a document obtained by *TheStreet*.

Aided by this promotional campaign, Galena shares tripled in value from this summer. Coincidence or not, Galena insiders have made millions of dollars by selling company stock in January.

Galena did not respond to phone calls and emails seeking comment.

In July 2013, Galena paid $50,000 to a subsidiary of The DreamTeam Group for 240 days of "advertising, branding, marketing, investor relations and social media services," according to a disclaimer on The DreamTeam Group's Web site.

                    *        *        *

Publicly traded companies routinely pitch their stock to new investors, but some of DreamTeam's marketing tactics appear to resemble stock promotion schemes which run afoul of standard investor relations practices. Among its other services, DreamTeam Group operates more than two dozen investor Web sites with names like "Home Run Stocks," "Touchdown Stocks," "Quality Stocks," and "Tout Sheet." The Web sites entice investors with stock picks that can "trade for at least a 100% profit."

All the stock picks touted on these DreamTeam Web sites, including Galena, are paying clients -.a fact omitted from the Web sites unless someone clicks on a small disclaimer link.

Galena was promoted on many of the DreamTeam stock-touting Web sites to create "market buzz about the company to a new group of investors," according to a DreamTeam document, "Galena Biopharma Case Study: Investor Awareness Campaign" obtained by *TheStreet*.

As part of this campaign, DreamTeam published favorable articles about Galena on Seeking Alpha on Aug. 7, 2013 and Nov. 22, 2013, according to the case-study document. But the articles were written under aliases and make no mention of DreamTeam or its paid marketing relationship with Galena. Instead, they're written from the perspective of individual investors recommending an investment in Galena to other readers of *Seeking Alpha*.

"... investors must look for biopharmaceutical companies that have a unique approach to science, a deep pipeline, drugs with huge market potential, and a healthy fundamental picture. Galena has all of these attributes and shareholders with patience will be handsomely rewarded in due time," is how the author "Wonderful Wizard" pitches Galena to Seeking Alpha readers in the article, headlined "Galena Biopharma Presents an Attractive Investment Opportunity," [The article was actually published on Aug. 6.]

On Nov. 22, "Kingmaker" published a similar article on *Seeking Alpha* titled, "Galena Biopharma Continues to Develop a Deep Pipeline of Products." Neither article disclosed a financial relationship with DreamTeam Group or Galena.

Both articles were removed from *Seeking Alpha* on Monday because they were written by the same person.

"We pulled the Aug. 6 and Nov. 22 articles. Upon investigation, the contributor was in violation of our Terms of Use because 'Kingmaker' and 'Wonderful Wizard' were the same person but failed to tell us so," said *Seeking Alpha* Vice President of Content and Editor in Chief Eli Hoffman.

*Seeking Alpha* was unable to determine if the author was paid by DreamTeam Group to write the two articles on Galena, added Hoffman. Hoffman would not disclose the real identify of the author publishing under the "Kingmaker" and "Wonderful Wizard" aliases.

*    *    *

All that DreamTeam promotion worked wonders for Galena's stock price, which tripled in value from $2 per share in July 2013 to almost $7.50 in the middle of January. DreamTeam's contract for eight months of work with Galena ends this month.

Galena CEO Ahn unloaded $2.8 million in company stock in January, according to SEC filings. Director Steven Kriegsman, who's also the CEO of Cytrx, pocketed $2.1 million from the sale of Galena stock in the same month, according to SEC filings. Other Galena executives and directors have also been selling shares.

32.    In a blatant attempt at damage control to excuse the Individual Defendants, on February 14, 2014, Galena issued a letter to shareholders signed by Defendant Ahn, which stated:

Dear Shareholders:

Due to the recent media attention on Galena Biopharma that we acknowledge is having an impact on investor confidence, we felt it necessary, as a service to our shareholders, to publicly respond to the discussions and set the record straight.

The genesis of this attention is due to a single reporter, Adam Feuerstein from TheStreet.com, who clearly has an agenda when it comes to Galena. This can be evidenced by his numerous, tabloid-like articles on the company that have appeared over the past three years and are sensational but largely devoid of true information. The article this week is just another in the line, which for us have become noise.

Mr. Feuerstein has never requested a meeting with the company to understand the details of our programs or the goals of the company. On the contrary, his requests for information are consistently accusatory and negative. As a result, we do not feel it is worthwhile to engage him or respond to other media outlets that serve to advance his agenda. However, we do recognize that you, our shareholders, deserve a direct response on the matters at hand.

***The only facts in Mr. Feuerstein's most recent article that are remotely accurate are that Galena previously engaged the DreamTeamGroup and that insiders at the company, including me, divested shares in mid January.*** All other accusations in this article - as with his prior reporting on Galena — are specious and conveniently arranged to create controversy.

Over the past year, we have accomplished the following:
• Acquired Abstral® (fentanyl) sublingual tablets, implemented a commercial team, launched the drug in October 2013, and currently have approximately 5% of the branded market after only four months of launch. Abstral is part of a class-wide Transmucosal Immediate Release Fentanyl (TIRF) Risk Evaluation and Mitigation Strategy (REMS) program designed to mitigate the risk of misuse, abuse, addiction, overdose and serious complications due to medication errors with the use of TIRF medicines.
• Initiated our RELIEF Patient Registry trial for Abstral.
• Continued to progress our pivotal, Phase 3 PRESENT trial for NeuVax™ (nelipepimut-S) and added another commercial partnership with Dr. Reddy's in India.
• Progressed enrollment with our Phase 2b combination trial with NeuVax and Herceptin® (trastuzumab).
• Expanded our Intellectual Property with an issued patent for NeuVax in Europe.
• Advanced our pipeline with the initiation of a Phase 2 trial with GALE-301, and we expect to report the Phase 1 data mid-year.
• Broadened our portfolio into hematology with the acquisition of Mills Pharmaceuticals and anagrelide controlled release, now GALE-401.

These facts about Galena and our progress are indisputable and clearly demonstrate our dedication to the mission of transforming Galena into a leader in providing therapeutics across the entire cancer-care spectrum. My expectation is that 2014 will unlock additional opportunities that will undoubtedly serve to benefit all who are connected to the success of Galena - most importantly those individuals who are unfortunately confronted with the specter of cancer.

Looking ahead, I would hope that all investors, stakeholders and the media judge Galena on our ability to meet our publicly stated goals. Let success or failure be dictated by facts and data, not the questionable logic of a headline-seeking reporter.

We look forward to further updating you on our progress during our earnings conference call next month. Thank you for your continued interest in Galena.

Mark J. Ahn, Ph.D.

President & CEO

(emphasis added).

33.     The press release did little to assuage the culpability of the Individual Defendants'

insider selling. First, the Company *admits* in the press release to hiring the DreamTeam, which

published numerous articles under pseudonyms touting the Company's stock without disclosing

who paid for them, and that Company insiders subsequently sold millions of Company shares

aided by this promotional campaign.

34.     Second, Ahn's letter provided no evidence to support his or Galena's position.

Regarding the Galena situation, Ahn spoke to a reporter for *The Oregonian* who wrote a story on

February 14, 2014:

> "Ahn, Galena's CEO, said the company did not intend to mislead investors. He
> [Ahn] did not know the DreamTeam Group was not disclosing that its
> promotional materials were funded by Galena. In fact, he said he'd been told
> DreamTeam didn't write the Seeking Alpha articles. It was 'an independent
> writer,' he said."

35.     However, Ahn's defense directly contradicts the DreamTeam document which

affirms that the DreamTeam published the two *Seeking Alpha* articles on August 6, 2013 and

November 22, 2013.

36.     Lastly, Ahn told *The Oregonian* that insiders were prohibited from selling stock

until very recently because Galena was in negotiations to acquire Mills Pharmaceuticals.

However, when asked about insider selling in a different interview published on a February 4,

2014 *Seeking Alpha* article entitled "Galena: Read, Decide, Invest" Ahn contradicted this

statement by stating that he had sold Galena stock to "diversify for my family," and made no

mention of insider sale restrictions. Clearly, the Individual Defendants have lied to the Galena

shareholders at the expense of the valuation of the Company, and have themselves profited from these lies.

37.    As a result of the DreamTeam's promotional campaign, Galena shares tripled in value from the time the DreamTeam was hired in the summer of 2013.

38.    According to a February 14, 2014 *Seeking Alpha* article, entitled "A Deeper Look At The Galena Biopharma Controversy," Galena's staggering increase in stock price was directly correlated to the DreamTeam's marketing campaign. The February 14, 2014 *Seeking Alpha* article states in relevant part:

> **So, did DreamTeam's efforts payoff?**
>
> As I mentioned in my other Galena article, the company's monstrous rise appeared to occur without a catalyst. In fact, I stated the following at the time:
>
>> "The initial NeuVax data is a little over a year and a half away, Abstral won't turn the company cash flow positive for a minimum of 4 more years, and Galena is about to embark on an expensive Phase 2 trial for another clinical candidate."
>
> Put simply, I saw no reason for such a staggering bull run that topped out at a whopping 470% gain over the last 52 weeks. And I fail to see how the recent acquisition of Mills Pharmaceuticals adds anything of value to Galena at the current time.
>
> *Logic thus dictates that this meteoric rise was primarily the result of promotional efforts by DreamTeam, and had little to do with a change in the underlying fundamentals of the company.*

(emphasis added).

39.    Buried within the Company's most recent Form 10-K, for the year ended December 13, 2013 and filed with the SEC on March 17, 2014, the Company revealed that it learned in February 2014 that the SEC is currently investigating these matters related to the Company and the DreamTeam.

40. In an interview in February, Defendant Ahn stressed that as far as he knew, DreamTeam did not directly write the articles. "An independent writer did." Asked whether the Company reviewed the articles before they were posted, Ahn responded, "No, absolutely not ... The company did not review any of their activities." Ahn said he learned that Feuerstein was asking about DreamTeam in early February. But the decision to stop using the firm was unrelated.

41. However, investor Richard Pearson ("Pearson") says he has gone to the SEC with information that painted a different picture. He gave the federal government e-mails he exchanged with DreamTeam that indicated that Galena, as well as another firm, reviewed and edited the articles prior to their publication. Pearson believes they continued to do so through about Feb. 10, when DreamTeam told him the Feuerstein article may have caused Galena to cancel its contract.

**Galena's Connections With CytRx**

42. Defendant Kriegsman is the CEO of CytRx, another DreamTeam client. Galena was originally a subsidiary of CytRx and was later spun out of the Company.

43. CytRx paid $65,000 for a year's worth of stock promotion by DreamTeam. CytRx, along with Kriegsman, have recently been sued for securities fraud for failing to disclose that certain articles regarding the company were actually paid promotional materials issued and edited by DreamTeam.

44. Following the heavy media attention on Galena, the DreamTeam has removed from its website disclosure on both CytRx and Galena. But the cached pages from search engines still show that the amount paid by CytRx to Dream Team was $65,000. The fact that

DreamTeam is now removing its own disclosures on CytRx and Galena is telling in and of itself. It is cause for substantial concern.

45.   According to an article entitled "Behind the Scenes with DreamTeam, CytRx and Galena," published by Pearson on *SeekingAlpha.com*, CytRx management was well aware that these articles are being published. They were also actively participating in the editing of the articles.   CytRx management also should have been well aware that no disclosure was being made about the fact the CytRx management was paying DreamTeam and the writers for these articles, or about the editing of them.

**Defendants' Illegal Insider Sales**

46.   At the end of July 2013, Galena's stock price was hovering below $2 per share and by January 2014 Galena stock price had increased to a high of $7.77 per share, as noted by the graph below:



47.   Based on the material non-public information that Galena had hired the DreamTeam to inflate its stock price via a promotional campaign, and around the time the DreamTeam Group was set to conclude their work, the Individual Defendants made enormous

and suspiciously timed insider sales totaling approximately *$14.6 million* from January 17, 2014

to February 12, 2014 as follows:

| Name | Title | Trade Date | Shares Sold | Sale Price | Gross Proceeds |
|---|---|---|---|---|---|
| Richard Chin | Director | 2/12/14 | 187,500 | $4.33 | $811,875 |
| | | 1/30/14 | 75,000 | $5.57-$5.61 | $419,000 |
| | | | | **TOTAL:** | **$1,230,875** |
| Stephen S. Galliker | Director | 2/3/14 | 300,000 | $4.18 | $1,254,000 |
| | | | | **TOTAL:** | **$1,254,000** |
| Sanford Hillsberg | Director | 1/30/14 | 250,000 | $5.41 | $1,325,500 |
| | | 1/17/14 | 200,000 | $6.93 | $1,386,000 |
| | | | | **TOTAL:** | **$2,711,500** |
| Rudolph Nisi | Director | 1/29/14 | 250,000 | $5.28 | $1,320,000 |
| | | 1/17/14 | 200,000 | $6.90 | $1,380,000 |
| | | | | **TOTAL:** | **$2,700,000** |
| Mark Ahn | President, CEO and Director | 1/27/14 | 796,765 | $4.83 | $3,848,374 |
| | | | | **TOTAL:** | **$3,848,374** |
| Steven A. Kriegsman | Director | 1/22/14 | 250,000 | $6.13 | $1,532,500 |
| | | 1/17/14 | 200,000 | $7.00 | $1,400,000 |
| | | | | **TOTAL:** | **$2,932,500** |
| | | | | **GRAND TOTAL:** | **$14,677,249** |

48.    On November 22, DreamTeam posted an article to *SeekingAlpha.com* under the

username "Kingmaker" entitled, "Galena Biopharma Continues to Develop a Deep Pipeline of

Product." This article pumped Galena stock while simultaneously failing to disclose its

marketing period. Galena's stock price rose to $7.48 per share by close of business on January

16, 2014. As noted in the above chart the next day on January 17, 2014, Defendants Nisi,

Kriegsman and Hillsberg sold a total of 600,000 shares. Less than two weeks later on January

27, 2014, Defendant Ahn sold 796,765 shares and two days after Defendant Ahn's sales Defendant Nisi sold 250 shares on January 29, 2014.  The next day on January 30, 2014, Defendant Hillsberg sold 250,000 shares and Defendant Chin sold 75,000 shares.  A few days later on February 3, 2014, Defendant Galliker sold 300,000 shares.  Prior to the closing of the markets on February 12, 2014, Defendant Chin sold 187,500 shares, just two days before the Company's belated admission on February 14, 2014 that the Company had paid DreamTeam to promote the Company's stock.

49.     Clearly, these stock sales are suspicious because the trading activity was a material departure from Defendants' previous trading patterns and were not part of any normal or regular pattern or practice of such sales by the Individual Defendants.  Indeed, none of the Individual Defendants had sold Company stock for four (4) years prior to the foregoing sales.

50.     There is also no indication of any Rule 10b5-1 plans in place by any of the Individual Defendants at any time of the sales.

## DAMAGES TO GALENA

51.     As a result of the Individual Defendants' misconduct, Galena has been, and will continue to be, severely damaged by the Defendants' misconduct.

52.     Further, as a direct and proximate result of the Individual Defendants' actions, Galena has expended, and will continue to expend, significant sums of money.  Such expenditures include, but are not limited to:

(a)     costs incurred in investigating and defending Galena and certain officers and directors; and

(b)     costs incurred from compensation and benefits paid to the Individual Defendants who have breached their duties to Galena.

53.    Moreover, these actions have irreparably damaged Galena's corporate image and goodwill.  For at least the foreseeable future, Galena will suffer from what is known as the "liar's discount," a term applied to the stocks of companies who have been implicated in improper behavior and have misled the investing public, such that Galena's ability to raise equity capital or debt on favorable terms in the future is now impaired.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

54.    Plaintiff brings this action derivatively in the right and for the benefit of Galena to redress injuries suffered, and to be suffered, by Galena as a direct result of breaches of fiduciary duty by the Individual Defendants.  Galena is named as a nominal defendant solely in a derivative capacity.  This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

55.    Plaintiff will adequately and fairly represent the interests of Galena in enforcing and prosecuting its rights.

56.    Plaintiff was a shareholder of Galena at the time of the wrongdoing complained of, has continuously been shareholders since that time, and are current Galena shareholders.

57.    The current Board of Galena consists of the following individuals: Defendants Hillsberg, Chin, Galliker, Kriegsman, Nisi and Ahn and non-defendants William Ashton and Irving Einhorn.  Plaintiff has not made any demand on the present Board to institute this action because such a demand would be a futile, wasteful, and useless act, as set forth below.

### Likelihood of Substantial Liability of the Insider Selling Defendants

58.    Based on the material non-public information that Galena had hired the DreamTeam to inflate its stock price via a promotional campaign, and around the time the DreamTeam Group was set to conclude their work, the Individual Defendants made enormous

and suspiciously timed insider sales totaling approximately *$14.6 million* from January 17, 2014 to February 12, 2014.

  59.  The Insider Selling Defendants knew that no material event had occurred that would warrant a greater than 200% increase in Galena stock price and they were aware that the Company had retained DreamTeam to promote its stock.  Thus, they knew that Galena stock was artificially inflated.  The Insider Selling Defendants sold their shares within less than two weeks of each other, which coincided with the end of the DreamTeam's stock promotion.  As a result, demand is excused as to the Insider Selling Defendants because they face a substantial likelihood of liability for their breaches of fiduciary duties.

  60.  Defendants' stock sales are suspicious because the stock sales were not part of any normal or regular pattern or practice of such sales by the Individual Defendants.  Indeed, none of the Individual Defendants had sold Company stock for 4 years prior to the foregoing sales.  There is also no indication of any Rule 10b5-1 plans in place by any of the Individual Defendants at any time of the sales.

**Likelihood of Substantial Liability of the Nominating and Corporate Governance Members**

  61.  As members of the Company's Nominating and Governance Committee, Defendants Chin, Galliker and Nisi were responsible to develop and recommend a set of corporate governance guidelines and recommend changes as necessary.

  62.  These Defendants failed to make sure the Company's corporate governance principles provided adequate internal controls to prevent their own and the other Defendants' massive insider sales.  As a result of the Company's poor corporate governance principles, demand upon these Defendants is futile.

**Demand Is Excused because all the Members of the Current Board Face a Substantial Likelihood of Liability for Their Misconduct**

63.     The acts complained of constitute violations of the fiduciary duties owed by Galena's officers and directors and these acts are incapable of ratification.

64.     Galena has been and will continue to be exposed to significant losses due to the wrongdoing complained of herein, yet the Individual Defendants and current Board have not filed any lawsuits against themselves or others who were responsible for that wrongful conduct to attempt to recover for Galena any part of the damages Galena suffered and will suffer thereby.

65.     Moreover, despite having knowledge of the claims and causes of action raised by Plaintiff, the current Board has failed and refused to seek to recovery for Galena for any of the wrongdoing alleged by Plaintiff herein.  There is no evidence that the Board even subjected any of the Individual Defendants to disciplinary action, as required by the Company's own Code.

**FIRST CAUSE OF ACTION**

**Against the Individual Defendants for Breach of Fiduciary Duties for Insider Trading and Misappropriation of Information**

66.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

67.     At the time of the stock sales set forth herein, Defendants were in possession of material, adverse, non-public information as alleged herein and sold Galena common stock on the basis of such information.

68.     The information described above was proprietary non-public information material.  It was a proprietary asset belonging to the Company, which the Defendants used for their own benefit when they sold Galena common stock.

69.     At the time of their stock sales, Defendants possessed information that the DreamTeam was paid to pump the Company's tock.  Defendants' sales of Galena common stock

while in possession of this materially adverse, non-public information was a breach of their fiduciary duties of loyalty and good faith.

70.     Since the use of the Company's proprietary information for their own gain constitutes a breach of Defendants' fiduciary duties, the Company is entitled to the imposition of a constructive trust on any profits they obtained thereby.

71.     Plaintiff, on behalf of Galena, has no adequate remedy at law.

## SECOND CAUSE OF ACTION
### Against the Individual Defendants for Waste of Corporate Assets

72.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

73.     As a result of the Individual Defendants' failure to implement adequate internal controls to ensure that its public statement and financial results were accurate, Defendants made or caused the Company to make improper statements in the Company's press releases, public filings, and conference calls with analysts.  As a result, Galena is now subject to a securities fraud class action lawsuit.  The Individual Defendants have caused Galena to waste its assets by forcing it to defend itself in the ongoing litigation, in addition to any ensuing costs from a potential settlement or adverse judgment.  Further, the Individual Defendants have caused Galena to waste its assets by paying improper compensation and bonuses to certain of its executive officers and directors that breached their fiduciary duty.

74.     As a result of the waste of corporate assets, the Individual Defendants are liable to the Company.

75.     Plaintiff, on behalf of Galena, has no adequate remedy at law.

## THIRD CAUSE OF ACTION

### Against the Individual Defendants for Unjust Enrichment

76.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

77.     By their wrongful acts and omissions, the Individual Defendants were unjustly enriched at the expense of and to the detriment of Galena.  The Individual Defendants were unjustly enriched as a result of the compensation and director remuneration they received while breaching fiduciary duties owed to Galena.

78.     Plaintiff, as a shareholder and representative of Galena, seeks restitution from these defendants, and each of them, and seeks an order of this Court disgorging all profits, benefits, and other compensation obtained by these defendants, and each of them, from their wrongful conduct and fiduciary breaches.

79.     Plaintiff, on behalf of Galena, has no adequate remedy at law.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of Galena, demands judgment as follows:

A.     Against all of the Individual Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the Individual Defendants' breaches of fiduciary duties, waste of corporate assets, and unjust enrichment;

B.     Directing Galena to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect Galena and its shareholders from a repeat of the damaging events described herein.

C.     Extraordinary equitable and/or injunctive relief as permitted by law, equity, and state statutory provisions sued hereunder, including attaching, impounding, imposing a

constructive trust on, or otherwise restricting the proceeds of the Individual Defendants' trading activities or their other assets so as to assure that Plaintiff on behalf of Galena has an effective remedy;

D.     Awarding to Galena restitution from the Individual Defendants, and each of them, and ordering disgorgement of all profits, benefits, and other compensation obtained by the Individual Defendants;

E.     Awarding to Plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

F.     Granting such other and further relief as the Court deems just and proper.

### JURY DEMAND

Plaintiff demands a trial by jury.

Dated: March *31*, 2014                    Respectfully submitted,

                                           **SLATER ROSS**

                                           _____
                                           Christopher A. Slater, OSB No. 97398
                                           Sovereign Hotel, 4th Floor
                                           710 S.W. Madison Street
                                           Portland, Oregon 97205
                                           Tel: (503) 227-2024
                                           Fax: (503) 224-7299
                                           cslater@slaterross.com

                                           **FEDERMAN & SHERWOOD**
                                           William B. Federman, OK Bar No. 2853
                                           Sara E. Collier, OK Bar No. 20473
                                           10205 N. Pennsylvania Avenue
                                           Oklahoma City, OK 73120
                                           Tel: (405) 235-1560
                                           Fax: (405) 239-2112
                                           wbf@federmanlaw.com
                                           sec@federmanlaw.com

                                           *Attorneys for Plaintiff*

<u>VERIFICATION</u>

I, _Pratik Rathore_____, declare that I have

reviewed the Complaint ("Complaint") prepared on behalf of Galena Biopharma, Inc.

[NASDAQ: GALE], and I authorize its filing.  I have reviewed the allegations made in the

Complaint, and to those allegations of which I have personal knowledge, I believe those

allegations to be true.  As to those allegations of which I do not have personal knowledge,

I rely on my counsel and their investigation and for that reason believe them to be true.  I

further declare that I am a current holder and have been a continuous holder of Galena

Biopharma, Inc. common stock during the relevant time period in which the wrongful

conduct alleged and complained of in the Complaint was occurring.

_25<u>th</u> March____, 2014         _____
Date                                            (Signature of Investor)